**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Joseph E Jarvis,

        Plaintiff,

v.

Traka USA LLC, et al.,

        Defendants.

No. CV-24-08111-PCT-SMM

**ORDER**

Pending before the Court is Defendants' Motion to Dismiss for Failure to State a Claim. (Doc. 28). Defendants request this Court to dismiss Plaintiff's Second Amended Complaint (SAC). The Motion is fully briefed. (Docs. 32; 35). Also before the Court is Defendants' Motion to File Under Seal Exhibit A to their Motion to Dismiss. (Doc. 41). That Motion is also fully briefed. (Docs. 42; 44).

For the following reasons, the Court grants in part, and denies in part, Defendants' Motion to Dismiss. The Court also denies Defendants' Motion to seal.

## I.    BACKGROUND

In June of 2021, Plaintiff, 57-year-old Joseph Jarvis, was hired by Defendant Traka USA, LLC ("Defendant Traka") as a Tech Support Specialist. Plaintiff alleges that throughout his employment, he performed adequately, and based on certain measures, above expectations. Plaintiff further claims that he never had any issues with his coworkers or superiors leading up to the events surrounding his termination. Plaintiff worked remotely for Defendant Traka and in April of 2022, Plaintiff received approval

1    from the company to move to a remote area two hours north of Phoenix.

2        Plaintiff states that his first cause of concern regarding his employment arose in

3    July 2022, after the company hired an employee who was of a similar age as Plaintiff.

4    That similarly aged employee resigned approximately one month later. Plaintiff asserts

5    that after this resignation, Defendant Stephen Goshea, a direct superior to Plaintiff,

6    expressed that he and "upper management" had decided to no longer hire anyone over the

7    age of 40. The decision was allegedly made due to Defendant Goshea feeling inferior to

8    employees that were older than himself and not believing that older employees would

9    respect his seniority.

10       After this alleged discussion between Plaintiff and Defendant Goshea and before

11   the termination of Plaintiff in May 2024, it is asserted that approximately 12 people were

12   hired by Defendant Traka into the same department as Plaintiff—each of whom were

13   allegedly under the age of 40.

14       In July 2023[1], three of the newer employees were promoted from T1 Specialists,

15   the position that Plaintiff held, to T2 Specialists, a promotion that was accompanied with

16   a pay raise. Plaintiff believes that he was passed over for this promotion due to his age, as

17   he had more experience than the employees that were promoted and outperformed them

18   over the course of their employment.

19       The last employee to be hired during Plaintiff's employment was a 28-year-old,

20   Hispanic man, who Plaintiff alleges was hired to take over his job. This new employee

21   was hired on May 2, 2024. Starting the next day, Plaintiff alleges that he was subjected to

22   harassment that he believes was intended to induce Plaintiff to resign from his position.

23       The harassment allegedly involved supervisors and coworkers fabricating issues

24   with Plaintiff's performance of his job duties and sending messages that Plaintiff deemed

25   disparaging and condescending. Plaintiff states that he made a complaint regarding

26   Defendant Goshea's behavior towards him on May 3, 2024. On May 8, 2024, Plaintiff

27   was requested to attend a meeting with the Human Resources Department the next day.

28
---
[1] In the First Amended Complaint (Doc. 11), Plaintiff states that the promotion occurred in "June 2023" rather than "July 2023," as stated in the SAC.

At that meeting, Plaintiff was informed that his employment was being terminated.

On May 14, 2024, Plaintiff was provided with a letter that stated he was being terminated for several reported and documented violations of Traka's corporate policies as well as the Traka Employee Handbook. The violations listed were as follows: unsatisfactory work quality or quantity, insubordination, including improper conduct towards a manager, the failure or refusal to carry out an instruction, and the failure or refusal to perform a task assigned by a managers, in an appropriate manner, failure to follow Company policies and/or procedures, failure to maintain satisfactory and cooperative working relationships with customers, Manager, or other employees, and walking off the job.

After receiving the letter from Defendants, Plaintiff responded stating that he believed Defendants were acting discriminatorily in violation of the law, that the reasons for his termination were pretextual, and that he intended to seek legal recourse.

On or about May 14, 2024, Plaintiff filed a complaint alleging discrimination with the Federal Equal Employment Opportunity Commission ("EEOC") and State of Arizona Attorney General's Civil Rights Division. There is a dispute between Plaintiff and Defendants as to whether Plaintiff filed a EEOC charge against Defendant Assa Abloy Global, the parent company of Plaintiff's direct employer, Defendant Traka.

On June 10, 2024, Plaintiff served the summons and complaint on the Defendants' legal representative. Plaintiff named the following Defendants: Traka, USA, LLC, Assa Abloy Global, Inc., Danny Garrado, President of Traka, Elizabeth Sidor, Human Resources manager of Traka, Stephen Goshea, Plaintiff's supervisor at Traka, Christy Law, a coworker of Plaintiff, and Donniel Ogorek, in-house counsel for Plaintiff's employer.

Over the course of the proceedings to this point, Plaintiff has filed numerous Motions for Sanctions and Motions to Strike, alleging bad faith and fraud on the part of Defendants and their counsel. On August 12, 2024, Defendants filed a Motion to Dismiss, and on August 29, 2024, Defendants filed a Motion to Seal Exhibit A to their

Motion to Dismiss. Exhibit A was a copy of the EEOC charge filed against either Defendant Traka, or Defendants Traka and Assa Global, Inc.

## II.    MOTION TO SEAL LEGAL STANDARD

There is a "strong presumption in favor of [public] access to court records." <u>Foltz v. State Farm Mut. Auto. Ins. Co.</u>, 331 F.3d 1122, 1135 (9th Cir. 2003). The determination of whether filed motions and documents may be filed under seal or must remain accessible to the public "turn[s] on whether the motion is more than tangentially related to the merits of a case." <u>Ctr. for Auto Safety v. Chrysler Grp.</u>, LLC, 809 F.3d 1092, 1101 (9th Cir. 2016). If a sealing request concerns materials that are more than tangentially related to the merits of a case, the movant must meet the "compelling reasons" standard. <u>Id.</u> at 1096 (citing <u>Kamakana v. City & Cnty. of Honolulu</u>, 447 F.3d 1172, 1178 (9th Cir. 2006)).

Under the compelling reasons standard, the movant must "articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure." <u>Kamakana</u>, 447 F.3d at 1178–79. Compelling reasons may arise when court files may "become a vehicle for improper purposes, 'such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets.'" <u>Id.</u> at 1179 (quoting <u>Nixon Warner Commc'ns, Inc.</u>, 435 U.S. 589, 598 (1978). After considering the competing interests at stake, "if the court decides to seal certain judicial records, it must 'base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture.'" <u>Id.</u> at 1179 (quoting <u>Hagestad v. Tragesser</u>, 49 F.3d 1430, 1434 (9th Cir. 1995).

## III.    MOTION TO SEAL ANALYSIS

Defendants moves to seal Exhibit A to Defendants' Motion to Dismiss, which contains Plaintiff's EEOC charge. They make this request to protect the Parties' interest in keeping Plaintiff's personal information private, while still allowing public access to all other portions of the record. Defendants believe there is little benefit to the public that

- 4 -

1    could be gained from releasing this information and that the other case documents are

2    sufficient to satisfy whatever need the public does have in information regarding this

3    matter. Defendants state that Plaintiff demanded that Defendants make the Motion.

4    Plaintiff uses his response to the Motion to Seal to raise arguments against the Motion to

5    Dismiss, which is improper.

6         The Court finds that the information included in Plaintiff's EEOC charge mirrors

7    the information included in Plaintiff's Complaint. Therefore, there is no compelling

8    reasons that outweigh the general history of access and the public policies favoring

9    disclosure. Id. at 1178–79. Further, Defendants state that they only filed this Motion to

10   Seal after receiving a demand from Plaintiff to do so. As Plaintiff now opposes

11   Defendants' Motion to Seal, the Court finds no reason to grant the request. The Court,

12   therefore, denies Defendants' Motion to Seal.

13   **IV.    MOTION TO DISMISS LEGAL STANDARD**

14        A pleading must contain "a short and plain statement of the claim showing that the

15   pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The pleading must "put defendants

16   fairly on notice of the claims against them." McKeever v. Block, 932 F.2d 795, 798 (9th

17   Cir. 1991). While Rule 8 does not demand detailed factual allegations, "a complaint must

18   contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

19   plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl.

20   Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the

21   plaintiff pleads factual content that allows the court to draw the reasonable inference that

22   the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the

23   elements of a cause action, supported by mere conclusory statements, do not suffice." Id.

24        Motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) "can be based

25   on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a

26   cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.

27   1990). At the Complaint stage, in evaluating a motion to dismiss, a court will "accept the

28   factual allegations of the complaint as true and construe them in the light most favorable

to the plaintiff." <u>AE ex rel. Hernandez v. Cnty. of Tulare</u>, 666 F.3d 631, 636 (9th Cir. 2012).

## V.    MOTION TO DISMISS ANALYSIS

### A. Count One: Unlawful Termination Age Discrimination

Plaintiff's first Count alleges that both Defendant Traka's decision not to promote him and decision to terminate him was due to discrimination based on his age. Under the ADEA, it is "unlawful for an employer ... to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age" when such individual is "at least 40 years of age." 29 U.S.C. §§ 623(a), 631(a).

Defendants argue that so far as Plaintiff alleges that he was discriminated against based on his age because he was not selected for the promotion mentioned in the Complaint, the claim is time-barred. An employee's charge with the EEOC, a requirement before filing an ADEA suit in federal court, must be filed "within 300 days after the alleged unlawful practice occurred." 29 U.S.C. § 626(d)(1)(B). Plaintiff filed his charge with the EEOC on May 24, 2024, therefore Defendants assert the promotion occurred outside the 300-day window, being before July 29, 2024. Defendants suggest that the revision made by Plaintiff between the original and amended complaints (<u>see</u> FN 1), was made "in bad faith, and only after Defendants' counsel informed him that Defendants would be filing a Motion to Dismiss his Complaint in part because his promotion claim was time-barred."

Plaintiff responds that the decision not to promote him was a part of the continuous denial of equal pay as compared to younger employees, even if it was outside the 300-day statutory period. Plaintiff asserts that the time period renews with each act of discrimination. Additionally, Plaintiff states that he is not sure whether the decision to promote occurred in June or July and believes that discovery will reveal the date.

To pursue a civil action for discrimination claims under the ADEA, a plaintiff must first file a timely charge with the EEOC. 42 U.S.C. § 2000e–5(e); 42 U.S.C. §

12117; 29 U.S.C. § 626(d); <u>Albano v. ScheringPlough Corp.</u>, 912 F.2d 384, 386 (9th Cir. 1990). This requirement serves the important purpose of providing the EEOC an opportunity to investigate discriminatory practices and perform its roles of obtaining voluntary compliance and promoting conciliation. See <u>B.K.B. v. Maui Police Dep't</u>, 276 F.3d 1091, 1099 (9th Cir.2002).

For the purposes of the Motion to Dismiss, the 300-day window does not bar Plaintiff's claim. First, although the promotion may have been outside of the 300-day window, as the SAC currently states, the promotion occurred in July. Viewing this statement in a light most favorable to the Plaintiff, this can be presumed to be within the 300-day window, which would include the last three days of July. Additionally, a plaintiff is permitted to use "prior acts as background evidence in support of a timely claim." <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 113 (2002). Therefore, even if the decision not to promote Plaintiff was made outside of the 300-day window, Plaintiff's Complaint can be read to plead this as an act prior to his termination, which demonstrates Defendants' alleged discriminatory intent.

As to Plaintiff's claim that his employment was terminated for discriminatory reasons, Defendants argue that Plaintiff has failed to plead facts sufficient to state a claim under the ADEA. Defendants state that the only "direct evidence" presented by Plaintiff is the alleged remark made by Defendant Goshea stating that he and upper management would no longer hire employees older than Defendant Goshea. Such a statement, Defendants allege, is a "stray remark," insufficient to create an inference of a discriminatory motive. Further, Defendants assert that Plaintiff has not met the requirement of showing that he was performing his job satisfactorily. Defendants instead assert that the dialogue included in Plaintiff's Complaint show the issues that were being raised with Plaintiff's performance of his job duties.

The Court finds at this stage of the proceedings, the Plaintiff has made a sufficient showing of a discrimination case under the ADEA. Defendants are correct that a "stray remark" has been found insufficient to establish discrimination. <u>Merrick v. Farmers Ins.</u>

Grp., 892 F.2d 1434, 1438 (9th Cir. 1990). However, such an argument is improper at the motion to dismiss stage. Viewing the SAC in a light most favorable to the Plaintiff, it states that his supervisor told him that he would discriminate against ADEA covered persons, then his employer undertook such discriminatory actions, and Plaintiff was fired, and potentially not promoted, due to his age. Such is enough to state a claim under the ADEA.

Additionally, Plaintiff has plead facts that could lead the Court to find that he has performed his job satisfactorily. The SAC includes numerous references to positive reviews from Plaintiff's supervisors, in addition to allegations of statistical measures that would prove Plaintiff has performed his job satisfactorily. At this point in the proceedings, Plaintiff has adequately plead this element.

Defendants further assert Plaintiff failed to exhaust his administrative remedies against Defendant Assa Abloy Global, as only "Traka USA LLC" was listed in his EEOC charge. Plaintiff asserts that "Assa Abloy Global Solutions, Inc" was included in his EEOC charge, dated May 14, 2024. Although Plaintiff may have attempted to file a new charge against Defendant Assa Abloy Global, Defendants assert the charge served by the EEOC on Defendant Traka had redactions over any employer other than Defendant Traka and Defendant Assa Abloy Global was never served a charge.

Again, the Court finds that the Plaintiff has sufficiently stated a claim under Rule 8. The Plaintiff has asserted that he filed two charges, one against Defendant Traka and one against Defendant Assa Abloy Global. He has provided a copy of said charge attached to his Response in Opposition of Defendants' Motion to Seal. (See Doc. 42 exhibit F)[2]. It is not clear as to why there are redaction in the EEOC charge received by Defendant Traka or as to why Defendant Assa Abloy Global has not received notice of the charge. However, at this stage of the proceeding, viewing the SAC in a light most favorable to the Plaintiff, the Court finds that Plaintiff has sufficiently plead that he has exhausted his administrative remedies. Whether Plaintiff has exhausted his administrative

---

[2] Although improperly filed outside of the briefing for this Motion to Dismiss, as Plaintiff is a pro se litigant, the Court will consider the exhibit at this time.

remedies against Defendant Assa Abloy Global can be determined at a later point in the proceedings.

Therefore, the Court denies Defendants' Motion to Dismiss Plaintiff's Count for Discrimination under the ADEA.

## B. Count Three[3]: Racial Discrimination

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race...." 42 U.S.C. § 2000e–2(a)(1). To survive a Rule 12(b)(6) motion for a claim brought under Title VII, a plaintiff must plead: (1) that the plaintiff belongs to a class of persons protected by Title VII; (2) that the plaintiff performed his or her job satisfactorily; (3) that the plaintiff suffered an adverse employment action; and (4) that the plaintiff's employer treated the plaintiff differently than a similarly situated employee who does not belong to the same protected class as the plaintiff. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).

Defendants assert that Plaintiff has failed to sufficiently plead discrimination based on race. Plaintiff is alleged to have merely included the conclusory statement that since the employee hired to replace him was of a different race, racial discrimination was therefore a reason behind his termination. These statements, it is asserted, do not raise the claim above the speculative level, and do not allow a Court to infer discrimination. Plaintiff counters that direct evidence is not required to plead a cognizable claim at this point in the proceedings, and that the circumstantial evidence plead support a conclusion that Plaintiff was terminated due to his race.

The Court agrees that Plaintiff has failed to state a cognizable claim. The Complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft, 556 U.S at 678 (quotation omitted). The only facts that are alleged by Plaintiff regarding racial discrimination are as follows:

---

[3] The Court notes that the SAC skips "Count Two" and goes directly from Count One to Count Three, causing each following count in the SAC to be misnumbered. The Court will label the counts in line with the SAC.

Plaintiff is a White man; Defendants hired a Hispanic man; Defendants terminated Plaintiff's employment; Plaintiff believes that the Hispanic man was hired to replace him. Accepting the allegations as true, the Complaint contains nothing to infer that race played a role in Defendants' decision to terminate Plaintiff. Therefore, Plaintiff has not sufficiently plead that he was treated differently than a similarly situated employee of a different race.

Given that Plaintiff is a pro se litigant, the Court will grant leave for the Plaintiff to amend his complaint to include any facts that would create a cognizable claim of racial discrimination under Title VII.

**C. Count Four: Retaliation**

To state a claim for retaliation under the ADEA or Title VII, a plaintiff must show that his employer retaliated against him after engaging in a protected activity. Barnes v. Saul, 840 F. App'x 943, 946 (9th Cir. 2020). The Ninth Circuit precedent states that activity is only protected if it opposes a specific employer's discriminatory practices. EEOC v. Crown Zellerbach Corp., 720 F.2d 1008, 1013 (9th Cir. 1983) ("The employee's statement cannot be 'opposed to an unlawful employment practice' unless it refers to some practice by the employer that is allegedly unlawful.")

Defendants assert that Plaintiff has failed to plead a cognizable claim for retaliation. Plaintiff alleges he was terminated after complaining about being harassed and discriminated against by Defendant Goshea. Specifically, Plaintiff told Defendant Goshea to "relax" and told Defendant Goshea that he was "being extremely confrontational and exaggerating." Further, Plaintiff told Defendant Goshea that he was concerned that Defendant Goshea was being "condescending" and "discriminating against" him. Further, Plaintiff told Defendant Goshea that he and Defendant Law were creating a "toxic work environment." Defendants assert that these statements by Plaintiff do not support the finding he acted to protect his rights.

As a preliminary matter, every action alleged by Plaintiff that occurred after his termination cannot be considered in determining whether he has adequately plead a claim

for retaliation, as post-termination comments cannot be the but-for cause for the already occurred termination. See Hodges v. CGI Fed. Def. & Intel., 727 F. App'x 236, 238 (9th Cir. 2018) (denying a retaliation claim when Plaintiff's complaints regarding his treatment came after his employer began to discuss terminating him.).

Further, statements to Defendant Goshea defending his work conduct or telling his supervisors and/or coworkers to "relax," and other comments to the effect, are also not a protected activity, as they are not referring to an allegedly unlawful work practice. See Crown Zellerbach Corp., 720 F.2d at 1013.

Therefore, the only potentially protected activities properly plead in the SAC are Plaintiff's statements to Defendant Goshea that he was "being discriminated against" and that "[p]ointing fingers at someone is never productive and only created a toxic work environment." Mere "buzzwords associated with unlawful employment practices," will not satisfy pleading a protected activity. See Alfonso v. Cmty. Bridges Inc., No. CV-21-01305-PHX-DWL, 2023 WL 4933193, at *19 (D. Ariz. 2023). The actual conduct described must be related to unlawful conduct. Id.

Here, Plaintiff's statements are clearly not referring to any alleged unlawful behavior. Plaintiff, rather, is merely repeating buzzwords associated with unlawful employment practices. The SAC attempts to plead Plaintiff may have disagreed with the criticism that was levied upon him by his supervisors, but there were no facts in the Complaint as to how the criticisms related to his age or race. Rather, from what is included in the SAC, Plaintiff interjects the buzzwords after criticism from his supervisor based on specific conduct related to the performance of his job duties. Giving negative feedback to an employee is not allegedly unlawful, and therefore raising concerns about the feedback is not protected activity. The Court therefore dismisses the retaliation claim without leave to amend, as the deficiency is not curable.

**D. Counts Five and Six: Workplace Harassment and Toxic Work Environment**

A claim for a hostile work environment based on age or sex requires a plaintiff to show: (1) he was subjected to verbal or physical conduct of an age-related or sex-related

nature, (2) the conduct was unwelcome, and (3) the conduct was "sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." See Vasquez v. City of L .A., 349 F.3d 634, 642 (9th Cir.2003). A plaintiff must show that her workplace was "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that [she] in fact did perceive to be so." Nichols v. Azteca Restaurant Enters., Inc., 256 F.3d 864, 871–72 (9th Cir.2001) (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998)).

Whether a work environment is hostile depends upon "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993).

Defendants assert that Plaintiff has failed to plead a cognizable claim for workplace harassment or toxic work environment. First, Defendants point towards the fact that none of the alleged comments made by Defendants that Plaintiff points to as an indicator of an effort to create a toxic work environment related to his race or age. Rather, the comments were directed towards his work performance. Further, Defendants point out that there is nothing improper about in-house counsel, Defendant Ogorek, engaging in discussions with Plaintiff surrounding his claim. Defendants state that Defendant Ogorek does not need to be licensed to practice law in Arizona to engage in such discussions. In sum, Defendants argue that Plaintiff's vague statements regarding a toxic workplace to not meet the pleading standards to state a cognizable claim.

Plaintiff responds that the Complaint includes numerous instances of harassment, including age-based comments. Specifically, Plaintiff points to Defendant Goshea's alleged comments regarding not wanting to hire or work with individuals older than himself, the alleged pattern of Defendant Traka hiring and promoting younger employees, the alleged false accusations made against Plaintiff regarding his work performance, and finally his allegedly unlawful termination. Plaintiff also points towards

instances of what he deems harassment after his termination, over the course of communications with Defendants regarding his claims and Defendants conduct during these proceedings.

As to the allegations of improper conduct during the discussions of Plaintiff's claim and in Defendants' pleadings before this Court, Defendants vehemently opposes the characterization of the communications as harassing or threatening. Further, Defendants state that Plaintiff's repeated threats of sanctions, agency complaints, and litigation against Defendants and their counsel are inappropriate.

As an initial matter, the Court finds that Defendants have not acted improperly in their pleadings before this Court, as alleged by Plaintiff. The Court has already addressed these allegations at length and the Court has reminded Plaintiff that Defendants have the right to defend themselves from Plaintiff's lawsuit. The Court agrees that such behavior by Plaintiff has been inappropriate. (See Docs. 20; 76; 78).

Further, the Court finds that Plaintiff has failed to state a claim for hostile workplace or harassment. The only age-based comment made to Plaintiff was the alleged July 2022 comment made by Defendant Goshea that he would not hire anyone older than him. All other plead conduct related to the hiring practices of the Defendants or the alleged false accusations levied towards Plaintiff regarding his work conduct.

"The required level of severity or seriousness 'varies inversely with the pervasiveness or frequency of the conduct.'" Nichols, 256 F.3d at 872 (9th Cir. 2001) (quoting Ellison v. Brady, 924 F.2d 872, 878 (9th Cir.1991)). Simple teasing, offhand comments, and isolated incidents, unless extremely serious, will not amount to discriminatory changes in the terms and conditions of employment. Id.

The Ninth Circuit has declined to find a claim of a hostile workplace when conduct alleged was of a much higher level of severity, seriousness, and frequency than alleged by Plaintiff. For instance, in Vasquez v. County of Los Angeles, the Ninth Circuit found the plaintiff's claim of continued racial harassment unsupported because it was based only on two racially discriminatory statements—that the plaintiff had a "typical

Hispanic macho attitude" and that "Hispanics do good in the field"—made more than six months apart, combined with two secondhand reports of verbal abuse, and two allegedly false performance complaints. <u>Vasquez</u>, 349 F.3d at 643–44. In <u>Kortan v. California Youth Auth.</u>, 217 F.3d 1104 (9th Cir.2000), the Ninth Circuit found no hostile work environment based on sexual harassment where "a supervisor called female employees 'castrating bitches,' 'Madonnas,' or 'Regina' on several occasions in plaintiff's presence; the supervisor called the plaintiff 'Medea'; the plaintiff complained about other difficulties with that supervisor; and the plaintiff received letters at home from the supervisor." <u>Id.</u> at 643-644.

The Plaintiff's allegations do not rise to the level of severity or frequency protected against, nor do they lead to a depiction of an "objectively . . .offensive [workplace], one that a reasonable person would find hostile or abusive." <u>Nichols</u>, 256 F.3d at 871–72 (9th Cir.2001). The SAC, read reasonable, does not state a claim upon which relief may be granted. Therefore, the Court dismisses Plaintiff's claims of a hostile workplace and harassment. The Court will grant leave to amend, as Plaintiff is a pro se litigant.

**E. Count Seven: Defamation**

In Arizona, "the elements of a defamation claim are: (1) defendant made a false defamatory statement about plaintiff, (2) defendant published the statement to a third party, and (3) defendant knew the statement was false, acted in reckless disregard of whether the statement was true or false, or negligently failed to ascertain the truth or falsity of the statement. <u>Farrell v. Hitchin' Post Trailer Ranch,</u> No. 1 CA-CV 11-0011, 2011 WL 6057930, at *2 (Ariz. Ct. App. 2011) (citing <u>Peagler v. Phoenix Newspapers, Inc.</u>, 560 P.2d 1216, 1222 (Ariz. 1977)).

Defendants argue that Plaintiff's claim of defamation is limited to the communications between Defendants and Plaintiff. Specifically, Defendant Goshea's May 2024 communications, Defendant Sidor's post termination communications, and Defendant Ogorek's post termination communications were all made directly to Plaintiff,

rather than to a third party. To the extent Plaintiff alleges communication among the Defendants, it is asserted that the communications cannot be the subject of an actionable defamation claim as they are matters of opinion. In the alternate, Defendants argue that communications between Defendants are protected by the intracompany privilege, as they were made between members of management regarding Plaintiff's performance.

Plaintiff responds that the Complaint alleges that the communications were distributed to third parties. The Complaint asserts the statements were distributed to attorneys involved in this action, the Court, and the Arizona Department of Economic Security ("ADES"). Further, Plaintiff did not respond to Defendants' argument that any communication between Defendants were opinions, or in the alternate, protected by intracompany privilege.

The Court finds that Plaintiff has failed to state a claim upon which relief may be granted. Much of the alleged defamatory statements were made directly to Plaintiff, and therefore were not distributed to a third party. These claims, therefore, are dismissed for failing to state a claim upon which relief may be granted, as they fail to allege an element of defamation. As to the communication to ADES, all that is included in the complaint is that "[t]he Arizona Department of Economic Security also requested evidence from the Defendants . . . to prove the Plaintiff Joseph E. Jarvis was terminated and the Defendants did not provide any evidence to justify terminating the Plaintiff's employment." This allegation does not show the elements of defamation and therefore must be dismissed. Specifically, the allegation does not allege that Defendants provided ADES with any false information, rather it only alleges that Defendants did not include in their filing justification for the termination. It is not alleged that justification is required in the filing with ADES and if no statement was made, there cannot have been defamation.

Further, a party to litigation "is absolutely privileged to publish defamatory matter concerning another in communications preliminary to," or in the course of, "a judicial proceeding in which he participates, if the matter has some relation to the proceeding." Gross v. Gross, No. 2 CA-CV 2019-0171, 2020 WL 1969910, at *2 (Ariz. Ct. App. 2020)

(quoting Restatement (Second) of Torts § 587 (1977)). To the extend Plaintiff argues that the filings to this Court are defamatory, he fails to state a claim as they are properly filed in the course of judicial proceeding, in which Plaintiff is participating. Further, the statements surrounding Defendants' view of Plaintiff's conduct over the course of his employment form an integral part of their defense in the action.[4] Therefore, Plaintiff's claims of defamation that rely on publication to this Court, during this proceeding, to satisfy the requirement of publication to a third party similarly fail to state a claim upon which relief may be granted.

Finally, as to the communications between Defendants, the Court finds first that internal "communication between two agents of the same principal is a publication for defamation purposes." Dube v. Likins, 167 P.3d 93, 105 (Ariz. Ct. App. 2007). However, each statement, other than Defendant Ogorek's assertion that Defendants would vigorously defend the claim, were simply matters of opinion regarding Plaintiff's work conduct. Such statements regarding a party's work performance have been held to be opinion. See Hedges Indus. Enterprises, Inc. v. Rio Tinto PLC, No. CV-09-8113-PCT-GMS, 2010 WL 2662270, at *7 (D. Ariz. July 1, 2010). Statements of opinion cannot form the basis of a defamation claim. Id. Additionally, there is no falsity to Defendant Ogorek's statement that Defendants intend to defend themselves from Plaintiff's claims.

The Court does not find that the deficiency may be cured by another amendment to the Complaint. Therefore, the defamation claims will be dismissed without leave to amend.

**F. Count Eight: Violation of Public Policy**

Plaintiff alleged Defendants acted in bad faith and against public policy when terminating Plaintiff's employment. The Arizona Legislature enacted the Arizona Employment Protection Act ("AEPA") in 1996, in response to Wagenseller v. Scottsdale Memorial Hospital, 710 P.2d 1025 (1985). In short, the AEPA enumerates the circumstances for when an employee may bring a wrongful termination action in

---

[4] The Court has already reminded Plaintiff of Defendants' right to defend themselves in the action that Plaintiff has brought against them. See (Doc. 76).

violation of public policy. <u>Arizona. Ferren v. Westmed Inc.</u>, No. CV-19-00598-TUC-DCB, 2021 WL 2012654, at *3 (D. Ariz. May 20, 2021).

The statute permits claims if "(a) the discharge was in violation of an employment contract, (b) the discharge violated a statute of this state, or (c) the discharge was in retaliation for the employee's assertion of certain rights protected by state law." <u>Cronin v. Sheldon</u>, 991 P.2d 231, 235 (Ariz. 1999). For an AEPA claim based on the violation of a statute of Arizona, "[i]f the statute provides a remedy to an employee for a violation of the statute, the remedies provided to an employee for a violation of the statute are the exclusive remedies for the violation of the statute or the public policy set forth in or arising out of the statute, including the following . . . The civil rights act [ACRA] prescribed in title 41, chapter 9." A.R.S. § 23–1501(3)(b). Therefore, only "[i]f the statute does not provide a remedy to an employee for the violation of the statute, [shall] the employee . . . have the right to bring a tort claim for wrongful termination in violation of the public policy set forth in the statute." <u>Id.</u>

Defendants assert that Plaintiff has not properly plead a violation of the AEPA and therefore must be dismissed. Plaintiff alleges in his Response that he plead a violation of the Arizona Civil Rights Act (ACRA), allowing recovery under the AEPA. Defendants responds that, even if Plaintiff tied his AEPA claim to a violation of the ACRA, the Count still must be dismissed, as the ACRA provides its own remedy.

First, the Court finds that in the SAC, Plaintiff did not tie his ADEA claim to the ACRA. The SAC does not, at any point, mention the ACRA. However, the SAC does allege a violation of "any other legal authority applicable to the defendant illegal actions of violating public policy and/or any legal authority this court may deem as just and proper." Even if this is a reference to the ACRA, the claim is not legally cognizable.

The ACRA provides to employees a remedy for its violation and therefore an AEPA claim for a termination in violation of public policy cannot be based on a violation of the ACRA. <u>Taylor v. Graham Cnty. Chamber of Com.</u>, 33 P.3d 518, 522 (Ariz. Ct. App. 2001); <u>See</u> Thomas D. Arn, <u>The Arizona Legislature Enacts Legislation Protecting</u>

1    Employment At–Will, 33 Ariz. Att'y 40, 43 (Aug./Sept. 1996) (The EPA "rectifies the
2    practice whereby claimants have relied on the ACRA as the basis of their wrongful
3    termination in violation of public policy claim); See David F. Gomez, The Employment
4    Protection Act After Cronin v. Sheldon, 36 Ariz. Att'y 28, 28 (Mar.2000) (when EPA
5    claim is based on employer's violation of another statute's public policy, if other statute
6    contains remedy, it is exclusive; and claim is actionable as a tort only if other statute has
7    no remedy.).

8         The Court will dismiss this Count, as there is not a cognizable claim for violation
9    of public policy based on a violation of the ACRA. The Court does not grant leave to
10   amend, as the claim is barred by law.

11   **G. Count Nine: Breach of Implied Contract**

12        The Plaintiff alleges that when Defendant Traka approved Plaintiff's move to a
13   remote area, they formed an implied contract of continued employment with Plaintiff, as
14   Plaintiff would not have moved to the job-sparse location without a guarantee of
15   continued employment. Further, the SAC states that when he was asked during a review
16   whether he was "considering continued employment with the company over the next 5
17   years" or if he was "currently looking for work," his responses created an implied
18   contract.

19        Defendants argue that the contract terms have been plead too vaguely. Even at the
20   Motion to Dismiss, Defendants argue, courts cannot be left to "guess" how a party failed
21   to perform their contractual obligations. Defendants state there was no offer, acceptance,
22   terms of the offer, or mutual assent.

23        Meanwhile, Plaintiff maintains that the Defendants' repeated assurances of
24   Plaintiff's value and job security, along with Plaintiff long and successful employment
25   history, created a reasonable expectation of continued employment.

26        To state a claim for the breach of an implied contract, Plaintiff must plead facts
27   that show the three elements for a breach of contract claim: (1) the existence of a valid
28   contract; (2) a breach; and (3) damages. Graham v. Ashbury, 540 P.2d 656, 657 (Ariz.

1975). A contract implied in fact is a true contract—an undertaking of contractual duty imposed "by reason of a promissory expression." <u>Barmat v. John & Jane Doe Partners A-D</u>, 747 P.2d 1218, 1220 (Ariz. 1987) (quoting 1 A. CORBIN, CORBIN ON CONTRACTS § 18, at 39 (1963)). The distinction between an express contract and one implied in fact is that in the former the undertaking is made by words written or spoken, while in the latter conduct rather than words convey the necessary assent and undertakings. 1 A. CORBIN, CORBIN ON CONTRACTS § 18, at 43.

The Court does not find that Plaintiff has plead facts to support his claim of an implied contract based on the representations allegedly made to him, as stated in his SAC. Indeed, even taking all well-pleaded allegations to be true, the Count only states that Plaintiff received permission to work remotely from a new location, that Plaintiff filled out a survey indicating he could see himself working at the company, and that on the same survey he stated he was not currently looking for work.

"Contract terms cannot be vaguely pleaded. Even at the motion to dismiss stage, courts cannot be left to 'guess' how a party failed to perform their contractual obligations." <u>Gannon v. Truly Nolen of Am. Inc.</u>, No. CV 22-428-TUC-JAS, 2023 WL 6536477, at *3 (D. Ariz. 2023) "Generally, before a court can find the existence of an implied contract, there must be an offer; there must be an acceptance; the acceptance must be in the terms of the offer; it must be communicated to the offeror; there must be a mutual intention to contract; and there must be a meeting of the parties' minds." <u>Id.</u>

At a minimum, Plaintiff has failed show a reasonable construction for the terms of the contract. There is nothing plead that makes "plausible" the allegation that Defendants assumed a contractual duty to guarantee continued employment by any promissory expression. The survey questions are not promissory expression, rather a routine process of many businesses to properly assess their future hiring needs. As to Defendant Traka's acceptance of Plaintiff's request to move to a new location, it cannot be reasonable construed to raise to the level of a promissory expression of continued employment. There are no facts plead that state Defendants even considered the possibility of replacing

Plaintiff's at-will employment status. The Count will be dismissed. The Court finds the deficiency cannot be corrected with another amendment. The Court therefore does not grant leave to amend.

## H. Individual Defendants

In his Complaint, Plaintiff named several defendants in their individual capacities. Defendants assert that Plaintiff's discrimination, harassment, and retaliation claims against the individually named Defendants must be dismissed, as Title VII and the ADEA do not impose individual liability. It is well-settled that individual defendants cannot be held liable under the ADEA or Title VII in the Ninth Circuit. See Miller v. Maxwell's Int'l Inc., 991 F.2d 583, 587 (9th Cir. 1993) (holding that employees are not liable in their individual capacities under Title VII and the ADEA). Therefore, Plaintiff's claims under Title VII and the ADEA against Defendants in their individual capacities must be dismissed. No leave to amend will be granted, as the claims are barred by law.

## I. Counts Ten through Seventeen: Damages

Finally, in Defendants' Motion to Dismiss, Defendants claims that Plaintiff improperly outlined his alleged damages and requested relief as legal claims and asks the Court to dismiss these counts. The Court agrees that Counts Ten through Seventeen are not legally cognizable claims, rather descriptions of the alleged damages that Plaintiff states he suffered because of the previously plead claims. Therefore, Counts Nine through Sixteen should be dismissed as claims, and only be considered as damages alleged to be suffered by Plaintiff.

Accordingly,

**IT IS ORDERED denying** Defendants' Motion to Seal. (Doc. 41)

**IT IS FURTHER ORDERED directing** the clerk of the court to unseal Defendants' Motion to Dismiss. (Doc. 28).

**IT IS FURTHER ORDERED granting in part, and denying in part**, Defendants' Motion to Dismiss. (Doc. 28).

**IT IS FURTHER ORDERED denying** Defendants' Motion to Dismiss as to

Count 1.

   **IT IS FURTHER ORDERED dismissing**, without leave to amend and with prejudice, Count 4, Count 7, Count 8, Count 9, Count 10, Count 11, Count 12, Count 13, Count 14, Count 15, Count 16, and Count 17.

   **IT IS FURTHER ORDERED dismissing**, with leave to amend and without prejudice, Count 3, Count 5, and Count 6.

   **IT IS FURTHER ORDERED dismissing** from this action Defendant Elizabeth Sidor, Defendant Stephen Goshea, Defendant Christy Law, Defendant Donniel Ogorek, and Defendant Danny Garrado.

   **IT IS FURTHER ORDERED directing** the Clerk of Court to terminate this action as to Defendant Elizabeth Sidor, Defendant Stephen Goshea, Defendant Christy Law, Defendant Donniel Ogorek, and Defendant Danny Garrado.

   Dated this 31st day of October, 2024.


                              Honorable Stephen M. McNamee
                              Senior United States District Judge